IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 15, 2017

## STATE OF TENNESSEE v. LATOYA BRITTON

**Appeal from the Criminal Court for Sumner County**
**Nos. 116-CR-2013, 555-CR-2013    Dee David Gay, Judge**

—————————————————————

### No. M2016-01139-CCA-R3-CD

—————————————————————

Defendant, Latoya Britton, appeals the trial court's revocation of her community corrections sentence and the imposition of additional consecutive sentencing and confinement upon resentencing. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Christopher V. Boiano, Nashville, Tennessee, for the appellant, Latoya Britton.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Lawrence Ray Whitley, District Attorney General; Sidney Preston, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Background*

On April 11, 2014, Petitioner plead guilty to two charges of theft of property between $500 and $1,000, four counts of passing a forged check, and one count of felony failure to appear in case nos. 116-CR-2013 and 555-CR-2013. The trial court ordered partial consecutive sentencing and imposed an effective sentence of twelve years at 60%. Defendant was ordered to serve two years in confinement and then be placed on community corrections. She was also ordered to attend and complete "Synergy." The judgment forms contain the following: "[T]he State will file a Notice of Sentence Enhancement if the defendant violates any Community Corrections supervision rules or fails to complete Synergy."

After being released to community corrections, a violation of community corrections warrant was issued against Defendant on October 1, 2015, alleging that Defendant "signed a voluntary admission for the use of Cocaine and Marijuana on 09/28/2015." Amended warrants were issued against Defendant on October 14, 2015, March 21, 2016, and April 4, 2016, alleging that Defendant "failed to report to the community corrections office on 10/07/2015 as instructed;" Defendant "was charged with Evading arrest and Theft of Merchandise on 03/20/2016 in Sumner County, TN;" and Defendant "was charged with Theft of Merchandise on 03/30/2016 in Sumner County, TN." On February 12, 2016, the trial court filed an order releasing Defendant on an "R.O.R" bond "due to her medical condition." Defendant was ordered to immediately report to her community corrections officer; comply with any rules and restrictions imposed by community corrections; continue to stay in touch with her defense counsel; refrain from using any drugs not prescribed by her physician; and "appear, as scheduled, on February 18, 2016 at 8:30 a.m. for an 'attorney & set' in the above cases." On February 23, 2016, the State filed a notice of intent to resentence and a motion to reconsider Defendant's bond. A hearing on the State's motion to reconsider bond was held on March 4, 2016, and on March 8, 2016, the trial court filed an order to continue the hearing to March 14, 2016. The order contains the following:

> IT IS FURTHER ORDERED that in the interim, the Defendant shall be required to report to the Community Corrections office each weekday and [cooperate] with said office in their efforts to secure a placement for the Defendant in a substance abuse treatment program; and

> IT IS FURTHER ORDERED that in the event that Community Corrections is able to secure a place for the Defendant in a substance abuse treatment program, the Defendant shall enter said program.

A community corrections violation hearing was held on April 18, 2016. Deshawn Vasser, a loss prevention associate for Walmart in Gallatin, testified that on March 30, 2016, he observed Defendant "selecting a ton of socks, placing them in her shopping basket." Mr. Vasser continued watching Defendant, and he saw her place the socks in some plastic Walmart bags that she had, and she "carried the bags around like she paid for the merchandise, and she walked out [of] the store without purchasing the items." Mr. Vasser said that Defendant walked out of the main doors to the store and "sat down in the vestibule on the bench." Mr. Vasser approached Defendant and introduced himself as a loss prevention associate. He asked her to come back inside the store and speak to him and a manager. He said, "[Defendant] proceeded to follow us and then she stopped and was like, [']Y'all can have your merchandise back. I know how this goes. I didn't steal anything.['] And she left." Mr. Vasser testified that the total value of the merchandise was $121.51. He contacted police, and Officer Moore came to the scene to

investigate. He provided Mr. Vasser with a photographic lineup, and Mr. Vasser identified Defendant as the person that he saw stealing the socks on March 30, 2016.

Jennifer Woodard is employed by Mid-Cumberland Community Corrections. She began supervising Defendant on March 5, 2015. She filed the first community corrections violation against Defendant on August 10, 2015, because Defendant tested positive for cocaine. Defendant pled guilty to the violation on September 28, 2015, and received "time served" and was placed back on community corrections. She was further ordered to enter and complete a "Pro-Social Life Skills Class." Ms. Woodard testified that Defendant did not complete the class.

Ms. Woodard testified that Defendant reported to her after the revocation hearing on September 28, 2015, and again tested positive for cocaine. At that time Defendant signed a "voluntary admission" of the use of cocaine and marijuana. Ms. Woodard then filed a violation report, and a community corrections violation warrant was issued on October 1, 2015. Ms. Woodard testified that an amended community corrections warrant was issued on October 14, 2015, after Defendant failed to report, and, also on March 21, 2016, after Defendant was charged on March 20, 2016, with evading arrest and theft of merchandise. The offenses occurred on January 29, 2016, and she pled guilty to the offenses on April 13, 2016. Ms. Woodard testified that a third amended violation was filed against Defendant on April 4, 2016, for the theft from Walmart that occurred on March 30, 2016.

Ms. Woodard testified that Defendant was picked up for the first community corrections violation on February 11, 2016. She said, "And [Defendant] was ROR'ed [released on own recognizance] that same day, and her medical condition was her pregnancy." Ms. Woodard had received an order from the trial court requesting that Defendant report to Ms. Woodard and be screened upon her release from jail. Defendant was thereafter drug tested on February 16 and 17, 2016. Both tests were positive for cocaine and marijuana. Ms. Woodard testified that there was a hearing on March 4, 2016, on the State's motion to reconsider Defendant's bond. Ms. Woodard testified that the hearing was continued until March 14, 2016, to allow Ms. Woodard "to work with [Defendant] to get her placed into a substance abuse treatment center that would not only benefit her but her child, as well." Ms. Woodard testified that after the hearing on March 4, 2016, she and Defendant spoke for some time in the lobby. Ms. Woodard testified that she explained to Defendant that "everyone just wanted her and her child to be safe and that we would find her somewhere to go. She had already done some work on her own and had some ideas of where she could go." After March 4, 2016, Ms. Woodard never saw Defendant. She said that Defendant did not appear in court on March 14, 2016, due to medical issues. The hearing was continued until March 22, 2016, and "an FTA [failure to appear warrant] was issued at that point." Ms. Woodard testified that she had attempted to contact Defendant after March 4, 2016. She said, "We've attempted several home visits at [Defendant's] last known address. We have attempted to contact family

members of [Defendant]. We've been to several residences to simply get in contact with [Defendant] without any luck."

Ms. Woodard agreed that Defendant has an extensive criminal history and is a career offender. She also agreed that Defendant had more than twenty felony convictions. Ms. Woodard testified that Defendant was required to go to treatment after her original sentencing hearing. She thought that Defendant did not attend that specific treatment program due to her medical condition. Concerning her relationship with Defendant, Ms. Woodard testified:

> [Defendant], up until this point, she and I had a great relationship. I have assisted her with several things. She knows that. And I have helped her with work, outside of work, any way that I possibly could up until here recently.

> \* \* \*

> When she would violate on her drug tests and when a warrant would be in the works, she would request treatment. Unfortunately, these last two times with her pregnancy that she requested treatment, she absconded from the Court and from supervision until her court date so we couldn't get that completed for her.

On cross-examination, Ms. Woodard testified that Defendant initially reported as ordered and was nice and very compliant. She said, "I didn't have any issues out of [Defendant] until a certain point. Up until she violated in August." Ms. Woodard testified that she did not attempt to get Defendant into a long-term treatment program because of her medical condition, and Ms. Woodard was not sure what was going on with Defendant. She agreed that Synergy is considered a long-term treatment program. Ms. Woodard testified that a community corrections counselor would have been responsible for getting Defendant into Synergy. She was not sure if Defendant ever met with a counselor. Ms. Woodard testified: "Since she was released for medical reasons, we would have waited until she was healthy enough to even go into Synergy."

Sharon Harris is an LPN with the Sumner County Jail. She testified that Defendant was thirty weeks pregnant at the time and taking the drug Makena once a week to stop her from going into pre-term labor. She also noted that "there is some question about the heart of the unborn child." Ms. Harris testified that Defendant had recently spent time at Vanderbilt Hospital for symptoms of a stroke but no "stroke-related incident" had been confirmed. She said that Defendant had some left or right side weakness "that is an unknown cause at this time."

The forty-two-year-old Defendant testified that she spent two years in confinement and was released a "couple of days early" due to an abnormal EKG. She was placed on

Community Corrections and required to complete the Synergy program. When asked if she completed Synergy, Defendant testified:

> No. When I got - - just from my initial paperwork at Community Corrections, My PO, she was looking through my paperwork and she was seeing where I had to go to Synergy. She was telling me that they had a drug class, that I would have to do a drug class there as part of my probation also. Nothing really came up with me hearing anything about Synergy anymore after that.
>
> I didn't initiate any other conversation because I didn't know that it was my responsibility to get into Synergy myself. I thought it was part of what my PO – I thought maybe that if I could have those classes that I didn't have to go to Synergy. I didn't know, sir. I just know that she said it was part of - - when she was going through my paperwork and I was signing all this stuff, just initial this, this is my first visit with Community Corrections, she told me about Synergy.

Defendant admitted that she is a drug addict and that she has been an addict for "20-something years." She felt that long-term treatment is probably necessary for her recovery. Defendant testified that she had been talking to her "TennCare counselor trying to figure out what my options would be with me being pregnant trying to get somewhere for me and my baby to go to where they accept mother and baby." She said that her biggest concern was that her baby was not "thrown to the State[.]" She also noted that she had been to a cardiologist, and her unborn child's heart was "good." Defendant testified that she did not want to be sent to prison because did not want to be away from her other children or her grandchildren again. Defendant admitted that she had used drugs while she was pregnant, but she now wanted to get healthy for the baby. She wanted to make sure that the baby "gets a chance."

On cross-examination, Defendant said that she would like to try long-term treatment or drug court. Defendant admitted that when she appeared on April 11, 2014, for her sentencing hearing, she told the trial court that she wanted treatment and that she had never been given an opportunity for treatment. She said that she did not go to Synergy as ordered because she did not know that it was her responsibility to "do the footwork" to go there. Defendant thought that she spoke with someone at Synergy before her sentencing hearing, and she had been accepted into the program on the condition that she was released from jail. After the sentencing hearing, Defendant was released on community corrections. Defendant testified:

> It was part of the plea agreement, Synergy, and me and Ms. Woodard talked about it. But she said that she was going to check with her, the woman that does the treatment there and see what that was about since it

was part of my plea agreement. It didn't say in my plea agreement, [Defendant] you are responsible for going and calling this man back and letting him know that you are out and going back - - going to Synergy.

Defendant said that she and Ms. Woodard never discussed Synergy any further. She said, "I was already going to be on Community Corrections, and she said I was already going to be going to drug classes there." Defendant testified that she did her "own work" trying to get into a treatment program that was covered by TennCare. She did not contact Ms. Woodard about getting into another program. Defendant admitted that she did not attend any Alcoholics or Narcotics Anonymous meetings while she was on release.

Defendant testified that she spoke with Ms. Woodard after court on March 4, 2016. She did not speak with her again after that day even though the trial court had ordered her to report to Ms. Woodard daily and to meet all the conditions for community corrections. Defendant agreed that she has an extensive criminal history dating back to May 22, 1999. She said that her criminal history began with forging checks. Defendant was incarcerated from 2001 until 2008. She agreed that she had well over twenty felony convictions, some of which were federal charges. Defendant testified that she did not attempt to find a job while on community corrections because she had applied for disability. She had been living with her daughters while on community corrections. Defendant admitted that she stole some items from Target on January 29, 2016, and attempted to return them for a gift card. She pled guilty to the offense on April 13, 2016. Defendant did not dispute Mr. Vasser's testimony concerning the theft at the Gallatin Walmart that occurred on March 30, 2016.

Upon questioning by the trial court, Defendant testified that she smoked one marijuana joint at the age of 16, and she began using "hard drugs" when she was 18. Defendant testified that within two years she was a drug addict. She never sought drug rehabilitation for her addiction. Defendant thought that she went to "Buffalo Valley" in the old jail in Marshall County for something. Defendant admitted that she had previously absconded from parole after she was released on May 23, 2008, for charges unrelated to this case. The trial court noted that Defendant had a total of forty-five felony convictions. Defendant asked the trial court to place her in a long-term treatment program and to get her out of Gallatin because Gallatin is her "down fall."

*Analysis*

Defendant argues that the trial court erred in revoking her community corrections based on criminal acts that were known at the time community corrections was granted. She also contends that the trial court abused its discretion by ordering additional consecutive sentencing and not granting "alternative sentencing or granting another probationary period[.]"

- 6 -

The decision to revoke a community corrections sentence or probation rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation has occurred. *State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar nature of a community corrections sentence and a sentence of probation"). The trial court is required only to find that the violation of probation or community corrections occurred by a preponderance of the evidence. *See* T.C.A. § 40-35-311(e); *see also id.* § 40-36-106(e)(3)(B). In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Concerning Defendant's community corrections revocation and resentencing, the trial court in this case made the following findings:

> I find that [Defendant] has violated the terms of her Community Corrections sentence, and in making this finding, I find that she has also been convicted of two crimes which triggers the second sentence to go into effect under the law. Both of these six-year sentences at 60 percent will be revoked and your sentence on the probation revocation violations, because you've been convicted of a crime while you're on consecutive sentences, those sentences will be ordered to serve and the total effective sentence will be 12 years at 60 percent in the state penitentiary. Now, you will be given your appropriate jail credits for these sentences.

> Secondly, the State of Tennessee has filed a notice to seek enhanced punishment. As I noted earlier, with 45 felony convictions, the defendant's sentence can't be enhanced in an E felony more than six years at 60 percent. However, there is consecutive sentencing to be considered in one case. In Case No. 116-2013, there was one felony conviction with a sentence of six years at 60 percent. In Case No. 555-2013 there were one, two, three, four, five, six convictions, E felonies, all six years at 60 percent that ran concurrently with each other but consecutively to the other case giving her an effective sentence of 12 years.

> Should this Court consider consecutive sentencing with the batch of felonies that were committed on Case No. 555? The Court can't help but notice the long criminal history here. And if this Court orders consecutive sentencing, then there must be a factor from 40-35-115 present to justify the imposition of consecutive sentencing.

- 7 -

There are different factors that our legislature has set out in 40-35-115. And if any of those apply, it should be. And I am considering that the defendant is an offender whose record of criminal activity is extensive. In considering that factor of the consecutive sentencing statute at 40-35-115, we start out with the fact that she said that she started using drugs at 18, 19, 20. 22 years of violating the law.

Now, it's a real problem with this Court when our citizens think, well, what are you doing? How can you hold that against me? I have no convictions from that. But if you wade through the spin and what the world tells you, you see the naked truth of violating the law on a consistent basis by using marijuana and cocaine for 22 years. And out of that 22 years spans 17 years of 45 felony convictions.

And then, while this Court is bending over backwards to try to help her and her baby that is unborn she's arrested for a crime on January 29th, 2016. And I quote from the affidavit, "The defendant was observed on video entering the business without any items and going to the baby section of the store. The defendant put a baby car seat, a rocking seat, and a breast pump into a shopping cart. The defendant then went to the customer service desk to return the items that she never purchased."

And this is unbelievable. She tells the court today that she had a Target card and she only got the Target card because she stole the stuff. Unbelievable. She was given a refund card because she stole it, and she tricked Target, and she got away with it. But once Target realized the defendant did not enter the building with the merchandise, they canceled the gift card. She was contacted and asked to come back to the business, and she replied that she was going to beat the charge. The officer instructed the defendant to remain in the store to get the citation book out, and she got into a vehicle and left. While this Court was bending over backwards to help her and her unborn child.

And then we hear testimony today of Deshawn Vasser from Wal[]mart in Gallatin. After she was arrested on this case, while she was on Community Corrections, while this Court was bending over backwards she walked into Wal[]mart in Gallatin about 4:07 p.m. She put a bunch of clothing into a basket. She bagged it up like she had paid for it. She passed a register and an EAS system and she sat down there in the vestibule when the store officer caught up with her. She was asked to come back in. She came in and [gave] the merchandise back, set them down, and then she promptly walked out.

She was given Community Correction sentences in Sumner County on September 1st, 2001, for similar charges. She was revoked on those charges on February 4th, 2002. Now, while she was on Community Corrections she received convictions for 30 counts of forgery in Marshall County. She received an effective sentence of 12 years at 60 percent to serve in the Tennessee Department of Corrections. She was eventually granted parole 5/23/2008. She absconded supervision on 8/3/2009 after being served with a parole warrant, and she was eventually sent to serve the remainder of her sentence in the Tennessee Department of Correction.

January 23rd, 2014, she appeared before me and was sentenced again 12 years at 60 percent for various crimes. On 4/11/14 she appeared before this Court again for a sentencing hearing. She was ordered to enter and complete Synergy after serving two years in the Sumner County Jail, which equals 18 months. She was ordered released on Community Corrections. She was released early from that sentence because of health reasons. First probation violation warrant was issued again four months - - within four months she tested positive for cocaine. She was released the same day that she was arrested because of heart complications.

On 9/28/2015 she entered a plea of guilty and was returned to Community Corrections for the remainder of this sentence despite all of this record here and ordered to complete Pro-Social Life Skills. Second violation was issued on 10/01/15 after she reported and signed an admission for the use of cocaine and marijuana. And amended petition was filed 10/14/15 after she failed to report.

Sometime during this period of time she became pregnant. She continued to use marijuana; she continued to use cocaine. On 3/4/16 a motion to reconsider her no bond [sic] was heard, and I released her and ordered her to report to the Community Corrections officer daily, seek drug treatment. She again failed to report and contact the officer. Everybody in this justice system was bending over backwards to help her.

On 3/20/16 the defendant was arrested for evading arrest and theft of merchandise. 3/22/16 defendant failed to appear and a capias was issued for her arrest. 3/30/16 another warrant was issued for theft of merchandise by the Gallatin Police Department and another amended warrant was issued.

Is the defendant an offender whose record of criminal activity is extensive? The answer is yes. She has 45 felony convictions, two

misdemeanor convictions, while she was asking for help and the Court was trying to give her help in this court. All this spans 17 years. She committed felonies while she was on Community Corrections supervision; she committed crimes while she was pregnant.

This Court has no alternative than to find that the defendant is an offender whose record of criminal activity is extensive. This society can not put up with this conduct and this unborn child deserves to live, [Defendant].

The trial court ultimately ordered Count 11 in case no. 555, six years at 60 percent, to run consecutively to the other cases, and "that will run consecutively to the 12 years at 60 percent. [Defendant's] total sentence in the state penitentiary will be 18 years at 60 percent."

Defendant first argues that the trial court erred in revoking her community corrections because the trial court based the revocation "on criminal acts that were known to it at the time probation was granted." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). Appellant's prior violations which resulted in changes to his community corrections and probation on the same sentence do not constitute "criminal acts known at the time probation was granted." *State v. Leman Earl Russell, Jr.*, No. W2012-02161-CCA-R3-CD, 2013 WL 3807964, at *4 (Tenn. Crim. App. July 17, 2013). Defendant argues that the trial court improperly considered proof presented in support of her original community corrections violation warrant, as well as the three amended warrants. She further argues that the trial court improperly considered her continued use of cocaine and marijuana and her failure to follow the previous order for her to seek admittance into a rehabilitation program. She further asserts: "As such, the trial court improperly considered criminal conduct committed by [Defendant] prior to the aforementioned dates of release (September 28, 2015 and March 4, 2016) as a basis for revocation."

However, the record shows that trial court did not abuse its discretion in revoking Defendant's community corrections sentence. The trial court relied on evidence that occurred after the hearing on March 4, 2016, in support of its decision to revoke community corrections, rather than Defendant's prior criminal record, as argued by Defendant. The trial court ordered Defendant to enter a drug treatment program, and she was ordered to meet with her community corrections officer. Defendant failed to do either of those things, and she continued to use drugs. The trial court also considered that the evidence was sufficient to support the allegations set forth in the community corrections violation warrant filed on March 21, 2016, concerning the shoplifting incident at Target which resulted in Defendant's subsequent convictions for shoplifting and evading arrest. Furthermore, the evidence was sufficient, and Defendant did not dispute, to show that Defendant was shoplifting at the Gallatin Walmart on March 30, 2016.

Although the trial court recited Defendant's prior criminal record, it was in the context of determining consecutive sentencing and whether Defendant was an offender whose record of criminal activity was extensive. Defendant has been given several attempts at rehabilitation and to complete her community corrections sentence, and these attempts have failed. "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. At Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn., June 28, 1999). The trial court did not err in this case by ordering Defendant to serve her sentence by incarceration.

Next, as for the trial court's order of partial consecutive sentencing, we find that the trial court did not abuse its discretion. After finding a violation of a defendant's community corrections, the "court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community based alternative to incarceration." T.C.A. § 40-36-106(e)(4). If the trial court resentences a defendant to a more severe sentence than originally imposed, it must conduct a sentencing hearing in accordance with the 1989 Sentencing Act. *See State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). When a trial court does not alter "the length, terms or conditions of the sentence imposed," a new sentencing hearing is not required. T.C.A. § 40-36-106(e)(2); *see State v. Samuels*, 44 S.W.3d 489, 493 (Tenn. 2001).

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the
> sentence that should be imposed, because the general assembly set the

- 11 -

minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Our supreme court has also extended the standard of review enunciated in *Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). Tennessee Code Annotated section 40-35-115 sets forth the factors that are relevant in determining whether sentences should run concurrently or consecutively. The trial court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the seven statutory factors exist. T.C.A. § 40-35-115(b). Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). The length of the resulting sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and

- 12 -

victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).

In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id*.; *Bise*, 380 S.W.3d at 705.

The trial court in this case properly found that Defendant is an offender whose record of criminal activity is extensive. This factor alone supports consecutive sentencing. "This factor has been interpreted to include not only the convictions presently before the sentencing court but also prior offenses." *State v. Palmer*, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999). The record shows that Defendant has 45 felony convictions, and her prior criminal history of convictions spans seventeen years. Defendant was charged with additional felonies for theft and evading arrest at Target and Walmart. Defendant admitted that she has used drugs since the age of 18, and she continued to use drugs after being released on community corrections. This issue is without merit.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in revoking community corrections, ordering incarceration, and increasing the effective sentence by ordering additional consecutive sentencing. Accordingly, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE